IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| A.R., individually and on behalf of her minor child, J.T., | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| STATE OF HAWAII, DEPARTMENT OF EDUCATION and KATHRYN MATAYOSHI, in her official capacity as Acting Superintendent of the Hawaii Public Schools, | ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) ) |
| _____ | ) |

CIVIL NO. 10-00174 SOM/RLP

ORDER AFFIRMING DECISION OF ADMINISTRATIVE HEARINGS OFFICER AND DENYING REIMBURSEMENT UNDER "STAY PUT" PROVISION

ORDER AFFIRMING DECISION OF ADMINISTRATIVE HEARINGS OFFICER AND
DENYING REIMBURSEMENT UNDER "STAY PUT" PROVISION

I.        INTRODUCTION.

        The question in this case is whether an agency that was

prevented by an uncooperative parent from implementing an

Individualized Education Plan until two weeks after the school

year had started is, as a result, required by the "stay put"

provision of the Individuals with Disabilities Education Act to

pay a child's private school tuition throughout the present

judicial proceedings.  Under the circumstances of this case, this

court's answer is "no."

        Plaintiff A.R., proceeding individually and on behalf

of her son, Joshua, seeks reversal of the Administrative Hearings

Officer's Findings of Fact, Conclusions of Law and Decision

("Decision") regarding Joshua's education.  The Decision, issued

on February 24, 2010, concluded that Defendants Department of Education for the State of Hawaii and Superintendent Kathryn Matayoshi (collectively, the "DOE") had offered Joshua a Free Appropriate Public Education ("FAPE"), and that any delay in offering a FAPE was caused by Joshua's mother.

Joshua's mother appeals this ruling, arguing that the Individualized Education Plan ("IEP") offered on August 18, 2009, violated the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 et seq., because it was not issued before the start of the school year at Joshua's home high school. The appeal is based solely on the untimeliness of the IEP. That is, Joshua's mother argues that untimeliness, as a per se violation of the IDEA, automatically makes the DOE liable to her. She does not challenge the content of the IEP or contest the factual finding in the Decision that she caused the delay in the issuance of the IEP. Instead, relying entirely on the untimeliness of the IEP, she contends that the DOE must pay Joshua's 2009-10 private school tuition and that the "stay put" provision of the IDEA, 20 U.S.C. § 1415(j), requires the DOE to continue to pay Joshua's tuition at his private school, Horizons Academy, during the pendency of these proceedings. The court now affirms the Decision and denies Joshua's mother's request that the court order payment of tuition under the "stay put" provision.

II.      STATUTORY FRAMEWORK.

"The IDEA is a comprehensive educational scheme,

conferring on disabled students a substantive right to public

education." Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298,

1300 (9th Cir. 1992) (citing Honig v. Doe, 484 U.S. 305, 310

(1988)).  The IDEA ensures that "all children with disabilities

have available to them a free appropriate public education that

emphasizes special education and related services designed to

meet their unique needs and prepare them for further education,

employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).

A.   Free Appropriate Public Education ("FAPE").

According to the IDEA, a FAPE consists of:

special education and services that-

(A) have been provided at public expense,
under public supervision and direction, and
without charge;

(B) meet the school standards of the State
educational agency;

(C) include an appropriate preschool,
elementary school or secondary school
education in the State involved; and

(D) are provided in conformity with the
individualized education program required
under section 1414(d) of this title.

20 U.S.C. § 1401(9).  To provide a FAPE in compliance with the

IDEA, a state educational agency receiving federal funds must

evaluate a student, determine whether that student is eligible

for special education and services, conduct and implement an IEP,

and determine an appropriate educational placement for the student.  20 U.S.C. § 1414.

The student's FAPE must be "tailored to the unique needs of the handicapped child by means of an 'individualized educational program' (IEP)."  <u>Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176, 181 (1982) ("<u>Rowley</u>") (citing 20 U.S.C. § 1401(18)).  The IEP, which is prepared at a meeting between a qualified representative of the local educational agency, the child's teacher, the child's parents or guardian, and, when appropriate, the child, consists of a written document containing:

> (i) A statement of the present levels of educational performance of the child;
>
> (ii) A statement of annual goals, including short-term instructional objectives;
>
> (iii) A statement of the specific educational services to be provided to the child, and the extent to which the child will be able to participate in regular educational programs;
>
> . . . .
>
> (v) The projected date for initiation and anticipated duration of these services; and
>
> (vi) Appropriate objective criteria and evaluation procedures and schedules for determining on at least an annual basis, whether instructional objectives are being achieved.

34 C.F.R. § 222.50; <u>see also</u> 20 U.S.C. § 1414(d).  Local or regional educational agencies must review, and, when appropriate,

revise each child's IEP at least annually.  20 U.S.C.
§ 1414(d)(4).  In addition, "[p]arental involvement is a central
feature of the IDEA."  Hoeft, 967 F.2d at 1300.  "Parents
participate along with teachers and school district
representatives in the process of determining what constitutes a
'free appropriate education' for each disabled child."  Id.

    Of particular importance in the present case is the
provision in the IDEA requiring a school district to have an IEP
in effect for each child with a disability at the beginning of
each school year.  See 20 U.S.C. § 1414(d)(2)(A); 34 C.F.R.
§ 300.323(a); see also Haw. Admin. Reg. 8-56-31 (2009) (requiring
same).[1]

    Violations of the IDEA may arise in two situations.
First, a school district, in creating and implementing an IEP,
may run afoul of the IDEA's procedural requirements.  Rowley, 458
U.S. at 205-06.  Second, a school district may become liable for
a substantive violation of the IDEA by drafting an IEP that is
not reasonably calculated to enable the child to receive
educational benefits.  Id. at 206-07.  The district must provide
the student with a FAPE that is "appropriately designed and
implemented so as to convey" to the student a "meaningful"
benefit.  Adams v. Oregon, 195 F.3d 1141, 1149 (9th Cir. 1999).

_____

    [1]This section was repealed effective November 23, 2009, but
was in effect during the time relevant to this case.  See Haw.
Admin. Reg. 8-56-31 (2010).

Joshua's mother alleges that the DOE violated the IDEA's procedural requirements.

While the IDEA guarantees certain procedural safeguards for children and parents, the Ninth Circuit has recognized that not every procedural violation results in denial of a FAPE. See L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 909 (9th Cir. 2009)("Procedural flaws in the IEP process do not always amount to the denial of a FAPE."). Procedural flaws in the IEP process only deny a child a FAPE when the flaws affect the "substantive rights" of the parent or child. Id. Such substantive rights include the loss of a child's educational opportunity or an infringement on the parents' opportunity to participate in the IEP process. Id.

When a public school fails to provide a FAPE, and the parent establishes that placement at a private school is appropriate, the IDEA authorizes reimbursement. See 20 U.S.C. § 1412 (a)(10)(C)(ii); Sch. Comm. of Burlington v. Dep't of Ed. of Mass., 471 U.S. 359, 370 (1985).

B.    "Stay Put" Provision.

The IDEA includes a "stay put" provision that permits a child to stay in the child's current educational placement during the pendency of any administrative or judicial proceeding regarding a due process complaint notice. See 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a), (d). The statutory provision,

bearing the title "Maintenance of current educational placement,"
states:

> Except as provided in subsection (k)(4), during
> the pendency of any proceedings conducted
> pursuant to this section, unless the State or
> local educational agency and the parents
> otherwise agree, the child shall remain in the
> then-current educational placement of the child,
> or, if applying for initial admission to a
> public school, shall, with the consent of the
> parents, be placed in the public school program
> until all such proceedings have been completed.

20 U.S.C. § 1415(j). Subsection (k)(4), referred to in the "stay
put" statute, concerns a child's placement pending a hearings
officer's decision.

When a hearings officer in a due process hearing has
previously agreed that a change of placement is appropriate, that
is sufficient to establish an agreement between the parents and
the state that the new placement is to become the "current
placement" going forward for "stay put" purposes. See Sch. Comm.
of Burlington, 471 U.S. at 372.

Although the statute itself does not speak of payment
or reimbursement, the Ninth Circuit has interpreted the "stay
put" provision as requiring a school district to fund the child's
"current placement" at a private school, when applicable, during
the pendency of any administrative or judicial proceedings under
the IDEA. See Clovis Unified Sch. Dist. v. Cal. Office of Admin.
Hearings, 903 F.2d 635, 641 (9th Cir. 1990) (per curiam). Unlike
other provisions of the IDEA, the "stay put" provision does not

7

require exhaustion of administrative remedies before relief may be sought in court. See N.D. v. Haw. Dep't of Educ., 600 F.3d 1104, 1110-11 (9th Cir. 2010). Thus, a plaintiff may seek a "stay put" order in the district court even if "stay put" issues were not litigated in administrative proceedings. See id.

III.        FACTUAL AND PROCEDURAL BACKGROUND.

There is no dispute that Joshua is a teenager who is eligible to receive special education and related services from the State of Hawaii. He is mentally retarded, and his disability is considered moderate to severe. Administrative Record ("AR") at 143. According to one of his teachers, he was performing at a preschool to kindergarten level when he was 14 years old. Transcript of Proceedings ("Transcript") at 64:3-5.

Joshua has been the subject of two administrative rulings. The present case is an appeal from the second of those rulings.

In the first ruling, issued on May 26, 2009, Administrative Hearings Officer Richard A. Young determined that Joshua's 2008-09 IEP had several substantive deficiencies and concluded that the DOE had not offered Joshua a FAPE. AR at 53. For the 2008-09 school year, meanwhile, Joshua's mother had unilaterally enrolled Joshua in Horizons Academy, a private school on Maui. Among other remedies, the May 2009 decision ordered the DOE to reimburse Joshua's mother for tuition at

Horizons Academy for the 2008-09 school year.  Id.; see also Petitioners' Exhs. at 16.

Following the Hearings Officer's May 2009 decision, Maui Waena Intermediate School, the public school that was Joshua's "home school" for the 2008-09 school year, attempted to reach Joshua's mother to schedule an IEP meeting.  When telephone calls were not returned, the school sent Joshua's mother a letter on June 8, 2009.  AR at 148.  She responded with a letter on June 11, 2009, requesting that the meeting be postponed until her attorney could attend.  Id.  She stated that she would contact the school when she determined her attorney's availability, but she did not do so.  Id.; Respondent's Exhs. 4 & 5.

Maui Waena Intermediate School wrote again to Joshua's mother on July 6, 2009, indicating that Baldwin High School, the public school that was Joshua's "home school" for the upcoming year, would contact her to arrange for the annual review of Joshua's IEP.  Petitioners' Exhs. at 40.  In a letter dated July 20, 2009, Joshua's mother wrote to the principals of Maui Waena Intermediate School and Baldwin High School, saying that she had spoken to the DOE about contacting her through her attorney, but that her attorney had not been contacted.  Respondent's Exh. 8. The letter stated that Joshua would continue at Horizons Academy for the 2009-10 school year.  Id.

Baldwin High School mailed a request to meet regarding Joshua's IEP on July 20, 2009. Petitioners' Exhs. at 42. Joshua's mother testified that she did not receive Baldwin High School's letter until she retrieved it from the Wailuku post office on July 28, 2009. Transcript at 88:9-89:11; Petitioners' Exhs. at 42. The letter proposed a meeting regarding Joshua's IEP on July 27, 28, or 29, 2009. Id.; Petitioners' Exhs. at 42. Joshua's mother called Baldwin High School and advised the school that she was not available on the proposed dates. Transcript 88:9-89:11.

Baldwin High School wrote another letter, dated July 31, 2009, proposing new dates for the IEP meeting. The school year began at Baldwin High School on August 4, 2009. AR at 95. An IEP meeting ultimately occurred on August 13, 2009, one of the dates proposed. See Petitioners' Exhs. at 45-46, 51. That meeting ended early, as requested by Joshua's mother and her attorney, and the IEP was completed at a meeting held on August 18, 2009. AR at 145. Rejecting the 2009-10 IEP as untimely and noting that the prior IEP was flawed, Joshua's mother sought a due process hearing and payment of private school tuition for 2009-10. AR at 8-13, 142, 147.

It appears from the record that the school year at Horizons Academy began on August 4, 2009. See Respondents' Exh. 14.

A due process hearing was held on November 23 and 24, 2009, again before Administrative Hearings Officer Young. The Hearings Officer heard testimony from several witnesses regarding the quality and appropriateness of the program available at Horizons Academy as compared with the program at Baldwin High School. In general, Joshua's mother called witnesses who testified that Joshua had made behavioral, social, and educational improvements at Horizons Academy. See, e.g., Transcript at 53-61, 91-99. The DOE witnesses testified that Baldwin High School provided a better opportunity for Joshua because it offered an established community-based instruction program that would expose Joshua to job-related activities regularly and would help make him as independent as possible. See AR at 145; Transcript at 293-94, 296. The DOE witnesses also testified that Horizons Academy would not be an appropriate placement because the school lacked training for staff, was too focused on classroom learning as opposed to real world experiences, and lacked the community connections Baldwin High School had. See, e.g., Transcript at 245-47, 265-71, 297.

On February 24, 2010, the Hearings Officer issued his Decision. AR at 141. The Hearings Officer concluded that the DOE had not violated Hawaii Administrative Regulation section 8-56-31(a) by failing to provide Joshua a timely IEP. Instead, he determined that the IEP was delayed because of Joshua's mother's

"obstructions and delays, which included failure to return telephone messages, failure to follow-through with scheduling, late notice of cancellation, pre-determination of private placement, and lack of cooperation." AR at 151-52. Although not necessary to the disposition, the Hearings Officer also concluded that Horizons Academy and Baldwin High School both constituted appropriate placements for Joshua. AR at 150-51. The Hearings Officer dismissed Joshua's mother's and Joshua's claims for relief. This timely appeal followed.

Before this court, Joshua's mother seeks a ruling that the IEP was procedurally deficient because it was issued two weeks after the school year at Baldwin High School had begun. In an opening brief of fewer than a dozen paragraphs, Joshua's mother states that she is raising the "legal question" of "whether student had a valid IEP at the start of the 2009-2010 school year." Opening Br. at 1, ECF No. 24. Joshua's mother also seeks an order that Joshua's tuition be paid by the DOE under the "stay put" provision of the IDEA. Opening Br. at 5. The "stay put" request is mentioned in a single sentence in the "Conclusion" portion of the opening brief and is accompanied by no legal or factual discussion. For this reason, this court, before holding a hearing on this matter, asked the parties to come to the hearing prepared to discuss the "stay put" issue. ECF No. 27.

At the hearing on this matter before this court, Joshua's mother's counsel stated repeatedly and firmly that the "stay put" provision very clearly applied as a matter of law. The DOE's counsel indicated that the DOE had been paying Joshua's tuition at Horizons Academy but was questioning how long it was required to make such payments. This court concluded the hearing by asking the parties to file supplemental briefs on the "stay put" issue. ECF No. 28.

Joshua's mother then submitted a supplemental brief that stated that the "stay put" provision applied "[n]o matter how many new IEP offers the DOE makes during the pendency of a challenge to an IEP." See Pls.' Supp. Br. 1-4, ECF No. 29. In response, the DOE, relying heavily on <u>Tennessee Department of Mental Health & Mental Retardation v. Paul B.</u>, 88 F.3d 1466 (6th Cir. 1996), argued that, because Plantiffs' challenge to the IEP was strictly procedural, the "stay put" provision did not apply. <u>See</u> DOE's Supp. Br., ECF No. 30. Although expressly permitted to submit a reply memorandum, <u>see</u> ECF No. 28, and although the Sixth Circuit case had not been previously addressed, Joshua's mother filed no reply memorandum.

IV.     <u>STANDARD OF REVIEW.</u>

Any party aggrieved by a decision of a due process hearings officer under the IDEA may appeal the findings and decision to any state court or a United States district court.

20 U.S.C. § 1415(i)(2).  The party challenging the administrative decision has the burden of proving deficiencies in the administrative decision.  <u>Seattle Sch. Dist., No. 1 v. B.S.</u>, 82 F.3d 1493, 1498 (9th Cir. 1996).

When evaluating an appeal of an administrative decision, a court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C). Additionally, "[e]quitable considerations are relevant in fashioning relief" under the IDEA.  <u>Sch. Comm. of Burlington</u>, 471 U.S. at 374.  By nature, equitable relief involves a fact-specific inquiry that the Ninth Circuit says must include a review of "[t]he conduct of both parties . . . to determine whether relief is appropriate."  <u>Parents of Student W. v. Puyallup Sch. Dist., No. 3</u>, 31 F.3d 1489, 1496 (9th Cir. 1994) (internal citations omitted).

V.        <u>ANALYSIS.</u>

This appeal is limited in scope.  Joshua's mother does not bring a substantive challenge to the IEP by arguing, for example, that the IEP offered by the DOE is not reasonably calculated to enable Joshua to receive educational benefits.  <u>Cf.</u> <u>Rowley</u>, 458 U.S. at 206-07 (explaining standard for alleging a

14

substantive violation of the IDEA). Nor does she challenge the
Hearings Officer's factual finding that she obstructed the
development of Joshua's IEP. Instead, she contends before this
court that, because the IEP was issued late, she was (and, under
the "stay put" provision, remains) entitled to send Joshua to
Horizons Academy at state expense. See Opening Br. at 1, 5.

This court's ruling is even more limited in scope than
Joshua's mother's appeal. While Joshua's mother seeks a ruling
that any untimeliness in the issuance of an IEP causes a state to
be liable for private school tuition, this court does not make
that broad pronouncement. Instead, this court, focusing on the
reason for the untimeliness, confines itself to ruling that, when
a parent causes the untimeliness and then, without disputing that
she caused the untimeliness, appeals an adverse administrative
ruling only on the ground that she must prevail as a matter of
law whenever an IEP is untimely, the parent may not prevail in
the appeal. That is, the parent may not prevail either in the
form of a reversal of the administrative ruling, see Rowley, 458
U.S. at 206; L.M., 556 F.3d at 909, or in the form of benefits
under the "stay put" provision.

This ruling is not only more limited than the ruling
sought by Joshua's mother, it is also more limited than the
ruling sought by the DOE. The DOE appears to be seeking a ruling
that, when a challenge to an IEP is based on alleged procedural

15

violations of the IDEA, rather than substantive challenges to the content of the IEP, the "stay put" provision does not apply. This court need not and does not address that broad contention.

A.   This Court Defers to the Hearings Officer with Respect to His Factual Findings.

Neither party challenges the factual findings made by the Hearings Officer, and the court defers to him with respect to those findings.  Unlike this court, the Hearings Officer conducted an evidentiary hearing.  He had also conducted an earlier hearing involving Joshua's education.  His 2010 Decision set forth findings of fact and justified its conclusions of law with reference to the factual record presented over the two-day hearing.  No party accuses the Hearings Officer of having been partial to either side, and the Hearings Officer gave credence to both sides' evidence.  See, e.g., AR at 150-51 (concluding that both Baldwin High School and Horizons Academy constituted suitable placements for Joshua).  The transcript demonstrates that the Hearings Officer was attentive during the hearing; although he did not actively question witnesses, he ruled with what appears to be promptness on objections during the hearing. Accordingly, the court gives deference to the Hearings Officer's Decision.  See R.B. v. Napa Valley Unified Sch. Dist., 496 F.3d, 932, 942-43 (9th Cir. 2007) (findings are considered thorough and careful when the officer participates in witness questioning and prepares a decision that contains a complete factual background

16

as well as a discrete analysis that supports the ultimate conclusions); see also J.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 440-41 (9th Cir. 2010) (according "due weight" and "particular deference" to a decision that followed a ten-day hearing involving active questioning by the administrative law judge, contained detailed factual background and analysis, and explained legal conclusions thoroughly).

Particularly relevant to this appeal is the Hearings Officer's finding that "Petitioners obstructed, or at the very least, failed to cooperate in the development of Student's IEP." AR at 149. This finding is not challenged by Joshua's mother.

B.    Joshua's IEP Did Not Violate the IDEA.

The IDEA and Hawaii's implementing regulations require that, at the beginning of each school year, the DOE have in effect an IEP for each child with a disability. 20 U.S.C. § 1414(d)(2)(A); 34 C.F.R. § 300.323(a); Haw. Admin. Reg. § 8-56-31(a) (2009). Joshua's IEP was late. It is not disputed that the IEP was completed on August 18, 2009, and that the school year at Baldwin High School began on August 4, 2009. Respondent's Exh. 2; AR 143.

However, the Hearings Officer concluded that the DOE's failure to provide a formal, written IEP before the start of the 2009-10 school year was caused by "obstruction and delay" and/or "lack of cooperation" on the part of Joshua's mother. AR at 150.

The Hearings Officer specifically noted Joshua's mother's

"failure to return telephone messages, failure to follow-through

with scheduling, late notice of cancellation, pre-determination

of private placement, and lack of cooperation."  AR at 150.[2]

Raising no challenge to the Hearings Officer's

findings in this regard, Joshua's mother claims that the summer

meetings were not designed to implement an IEP for the 2009-10

school year.  Opening Br. at 2.  The record suggests otherwise.

See, e.g., Letter from Jamie Yap to Joshua's mother, July 6,

2009, Resp. Exh. 6 ("You will be contacted very soon by Baldwin

High School in order to arrange for Joshua's Annual Review

IEP."); Letter from Natalie Gonsalves to Joshua's mother, July

20, 2009, Resp. Exh. 7 ("H.P. Baldwin High would like to hold an

IEP meeting for Joshua . . . to determine the Free and

Appropriate Public Education which is available to him. . . .

[H]is IEP will expire on August 25, 2009."); Letter from Natalie

Gonsalves to Joshua's mother, July 31, 2009, Resp. Exh. 9 ("H.P.

---

[2]The court notes that Joshua's mother's preference for a
private placement, expressed in July 2009, does not, standing
alone, excuse the school from having to prepare a timely IEP.
"[A] school district cannot escape its obligation under the IDEA
to offer formally an appropriate educational placement by arguing
that a disabled child's parents expressed unwillingness to accept
that placement." Union Sch. Dist. v. Smith, 15 F.3d 1519, 1526
(9th Cir. 1994).  However, in finding obstruction by Joshua's
mother, the Hearings Officer was not relying on that preference
alone.  Instead, the Hearings Officer listed numerous events
spanning the entire summer.

Baldwin High School is requesting your participation in the IEP annual review meeting for your son Joshua").

Given the lack of any challenge on this appeal to the Hearings Officer's factual finding that Joshua's mother caused the IEP to be delayed, the court does not re-examine that finding. The court accepts the Hearings Officer's finding that the IEP was untimely because Joshua's mother was obstructionist and/or uncooperative. Relying on this factual finding, this court affirms the Hearings Officer's Decision finding that the DOE cannot be found in violation of the IDEA for having allegedly denied Joshua a FAPE.

C.    No Showing is Made that Joshua's Substantive Rights Were Denied.

Quite apart from having caused the IEP to be untimely, Joshua's mother fails to show that Joshua suffered any loss of substantive rights because of the two-week delay. She claims that the late IEP necessarily resulted in the denial of a FAPE to Joshua. See Opening Br. at 1-5. However, the Ninth Circuit does not take such a absolutist approach. Instead, the Ninth Circuit says, "Procedural flaws in the IEP process do not always amount to the denial of a FAPE." L.M., 556 F.3d at 909. Even if a procedural violation occurs, the court must determine whether the violation affected either Joshua's or his mother's substantive rights under the IDEA. See id. Nothing in the record suggests that any substantive right was affected by the two-week delay.

Joshua's mother participated fully in the IEP process, as she was present at both IEP meetings. Moreover, it does not appear that Joshua lost any measurable educational opportunity because of the delay. Id.; cf. J.W., 626 F.3d at 460-61; Dep't of Educ. v. E.B., Civ. No. 05-00543 ACK/BMK, 2006 WL 1343681, at *7 (D. Haw. May 15, 2006).

In J.W., the school district issued its IEP three days after the beginning of the school year. 626 F.3d at 460. Before the school year began, but while negotiations with the school district regarding the student's IEP were proceeding, the parents unilaterally placed the student at a private school. Id. at 437, 460. On appeal, the Ninth Circuit rejected the parents' argument that the late issuance of the IEP resulted in the denial of a FAPE. Id. at 460-61. Noting that the student was being educated at the school of the parents' choice at that time, the court held that the plaintiffs had failed to "articulate how the formal placement offer made three days after the beginning of the school year denied Student an educational benefit." Id. at 461. By contrast, in E.B., the court determined that the DOE's failure to provide the student with an IEP until the month of December effectively deprived that student of a FAPE for that school year. 2006 WL 1343681, at *7.

Joshua was attending Horizons Academy during the two-week delay. The Hearings Officer found Horizons Academy to be an

appropriate private placement.  AR at 151.  Joshua did not,

therefore, suffer any actual lack of opportunity.  Nothing in the

record suggests that, if Joshua had begun the school year on

August 4, 2009, at Baldwin High School, he would have lost any

opportunity as a result of his IEP's not being in place by that

time.  Nor is there anything in the record indicating that, if

Joshua had begun the year by attending Horizons Academy but then

moved to Baldwin High School two weeks after the school year

began, he would have lost educational opportunities.  Notably,

Joshua's mother never asked to submit additional evidence on this

issue to the court.  See 20 U.S.C. § 1415(i)(2)(C).  Joshua's

mother therefore gives this court no basis for concluding that

the two-week delay in the Baldwin High School community-based

instruction program proposed in the IEP did cause or would have

caused Joshua's education to suffer in some measurable way.

Without connecting the two-week delay to some harm to Joshua's

education, Joshua's mother cannot demonstrate that the tardy IEP

resulted in the denial of a FAPE.  Accord J.W., 626 F.3d at 460-

61.  This failure independently justifies affirmance of the

Decision, even without the Hearings Officer's finding that

Joshua's mother caused the IEP to be late.

> D.   The "Stay Put" Provision Does Not Entitle Joshua's
>      Mother to Tuition Reimbursement.

Because she is not challenging the adequacy of the

content of the IEP, Joshua's mother's focus at this point is on

payment of Joshua's private school tuition.  In her briefs and at

the hearing on this matter, she has asserted a right under the

"stay put" provision at 20 U.S.C. § 1415(j) to payment of

Joshua's tuition at Horizons Academy.  The vehemence of her

counsel's declarations that the law gives her such a right has

not been matched in strength by the legal analysis or citations

she has submitted to the court.  The law is simply not as

absolute as Joshua's mother claims.

     The IDEA vests courts with "broad discretion" to

fashion appropriate relief.  See Sch. Comm. of Burlington, 471

U.S. at 369-70; see generally Ashland Sch. Dist. v. Parents of

Student E.H., 587 F.3d 1175, 1183 (9th Cir. 2009); 20 U.S.C.

§ 1415(i)(2)(C) ("In any action under this paragraph, the court .

. . shall grant such relief as the court determines is

appropriate.").  "Equitable considerations are relevant in

fashioning relief" under the IDEA.  Sch. Comm. of Burlington, 471

U.S. at 374.  As the court noted earlier in this order, "[t]he

conduct of both parties must be reviewed to determine whether

relief is appropriate."  Parents of Student W., 31 F.3d at 1496

(internal citations omitted).

     The Ninth Circuit notes that a request for relief under

the statutory "stay put" provision "functions as an 'automatic'

preliminary injunction."  Joshua A. v. Rocklin Unified Sch.

Dist., 559 F.3d 1036, 1037 (9th Cir. 2009).  The reference to

"automatic" means "that the moving party need not show the traditionally required factors (e.g., irreparable harm) in order to obtain preliminary relief." Id. This is a far cry from saying that any request for relief under the "stay put" provision must automatically be granted. Yet it is the latter proposition that Joshua's mother says is black-letter law. Joshua's mother provides no case authority to that effect, and this court has found none. This court concludes that the "stay put" provision does not afford Joshua's mother relief.

Crucial to this court's conclusion are two *unchallenged* determinations made by the Hearings Officer.

First, the Hearings Officer determined that the IEP, which proposed placement at Baldwin High School, provided Joshua with a FAPE. Joshua's mother does not argue that Baldwin High School does not meet Joshua's educational needs or that Joshua must attend Horizons Academy to obtain an appropriate education. The court has before it, therefore, an IEP that offers an undisputedly appropriate placement for Joshua. The sole ground for appeal is the untimeliness of the IEP.

Second, as this court has already noted several times in this order, the Hearings Officer found that Joshua's mother caused the IEP to be untimely. Although represented by counsel during the summer of 2009, she was uncooperative when the DOE attempted to schedule meetings at which the IEP could be

developed.  She does not argue on appeal that the Hearings
Officer erred in finding that she herself caused the very
procedural defect she complains about.

This court is without Ninth Circuit law that is
directly on point here.  However, decisions from other circuits
are helpful on the issue of whether the "stay put" provision
affords relief in this case.  Those decisions clearly reject the
proposition advanced by Joshua's mother that she is automatically
entitled to relief under the "stay put" provision.

In <u>Tennessee Department of Mental Health & Mental
Retardation v. Paul B.</u>, 88 F.3d 1466 (6th Cir. 1996) ("<u>TDMHMR</u>"),
the Sixth Circuit held that a purely procedural challenge to an
IEP was insufficient to support relief under the "stay put"
provision.  In <u>TDMHMR</u>, a father alleged that the Tennessee
Department of Mental Health and Mental Retardation (the
"Department") had led him to believe, during a meeting to develop
the IEP, that placement at Barton Avenue, a residential treatment
program, was part of his son Paul's IEP.  In fact, while
placement at Barton Avenue was discussed during the IEP meeting,
the IEP ended up proposing placement at Johnson Academy, a day
treatment program.  <u>Id.</u> at 1469, 1475-77.  As Paul had previously
been placed at Pinebreeze, a different residential treatment
facility, a day treatment program constituted a change.  <u>Id.</u> at
1469.  The father was not informed about the "stay put" provision

24

and, after the IEP meeting, he enrolled Paul at Barton Avenue at his own expense. See id. at 1470.

The father alleged that the Department's conduct kept him from receiving proper notice of the change, in violation of the procedural protections provided by the IDEA. Id. at 1477. The father was not, however, bringing any substantive challenge to the IEP. He "made no argument," for instance, "that Pinebreeze was the appropriate placement and should not have been changed or that the special services guaranteed [Paul] under the Act were denied him because the [Department] determined he no longer needed related residential psychiatric services as part of his IEP." Id. at 1474. Paul prevailed before the administrative law judge and the district court, which concluded that the Department was equitably liable for the costs of Barton Avenue because it had failed to inform the father that he could have maintained Paul's current residential placement (at Pinebreeze) if he wished to appeal the IEP. Id. at 1471.

On appeal, the Sixth Circuit reversed. The Sixth Court held that the district court had erred in granting reimbursement under the "stay put" provision. The Sixth Circuit reasoned that the "stay put" provision did not apply to the case because the father had not actually contended that Pinebreeze was an appropriate placement for Paul or even that Paul needed residential psychiatric services as part of his IEP. Id. at

1474.  Relying on the absence of a substantive challenge to the IEP, the Sixth Circuit said that the "stay put" provision did not apply.  Id.

     In the present case, the same Hearings Officer that had previously required the DOE to pay for Joshua to attend Horizons Academy during the 2008-09 school year has concluded that the DOE's IEP for 2009-10 offered Joshua a FAPE at Baldwin High School.  Like Paul's father in TDMHMR, Joshua's mother does not contend that the educational placement at Baldwin High School is inappropriate.  She contends only that the IEP was late.  Because she is not seeking a change in educational placement, the Hearings Officer's conclusion that the IEP offered a FAPE at Baldwin High School remains undisturbed on appeal.  If the rationale in TDMHMR were applied here, Joshua's mother's purely procedural challenge to the IEP would not entitle Joshua to "stay put" at Horizons Academy at the DOE's expense.  This court, however, sees no need to apply the broad rule stated in TDMHMR that a purely procedural challenge to an IEP does not trigger a right to relief under the "stay put" provision.  The Ninth Circuit may ultimately adopt the reasoning in TDMHMR, but this case allows this court to fashion a more modest rule.  The present case involves a procedural challenge arising out of a circumstance that the challenger herself indisputably caused.  Thus, this court states the more limited rule that a parent is

not entitled to relief under the "stay put" provision based on a procedural defect that the parent has indisputably caused.  Even with this more limited rule, <u>TDMHMR</u> remains relevant to this discussion because that case clearly holds that relief under the "stay put" provision is not automatically available whenever an IEP is challenged.

The Sixth Circuit is not alone is rejecting Joshua's mother's argument that "stay put" relief is automatically available.  In a recent case involving parental behavior that contributed to a school district's inability to create an IEP, the Third Circuit refused to apply the "stay put" provision to order reimbursement to the parents for private school tuition.

In <u>C.H. v. Cape Henlopen School District</u>, 606 F.3d 59 (3d Cir. 2010), C.H.'s parents unilaterally withdrew C.H. from the public school he had been attending and placed him in a private school.  They later negotiated a settlement under which the school district agreed to pay the cost of the private school for a year, although the parties stated expressly that "the placement was the sole decision of the [p]arents."  <u>Id.</u> at 63.  The following year, the parents re-enrolled C.H. at the same private school, then delayed the IEP process and refused to give the school district access to the child.  As a result, the school year began without completion of the IEP meeting process.  <u>Id.</u> at 64.  The day after the school year had begun, the parents filed a

request for a due process hearing, arguing that the late IEP
violated C.H.'s right to a FAPE and claiming entitlement to
reimbursement for private school tuition.  Id.  After losing
before the Hearings Panel and the district court, the parents
appealed to the Third Circuit.  Id. at 64-65.

The Third Circuit affirmed the district court, holding
that C.H. had not been denied a FAPE and therefore could not seek
tuition reimbursement.  Id. at 68-71.  As an alternative ground
for its ruling, the Third Circuit noted that "equitable
considerations weigh[ed] against granting the relief sought by
the Parents."  Id. at 71.  Specifically, the Third Circuit stated
that the parents' actions "substantially precluded any
possibility that the District could timely develop an appropriate
IEP for C.H. and provide the necessary services to him, or that
the parties could resolve this dispute without resort to
litigation."  Id.

C.H.'s parents also argued that the "stay put"
provision gave them the right to refuse to work with the school
district after they had filed their due process hearing request.
Id.  The Third Circuit disagreed.  "The stay-put provision," the
court said, "was never intended to suspend or otherwise frustrate
the ongoing cooperation of parents and the school district to
reach an amenable resolution of a disagreement over educational
services."  Id. at 72.  Cf. Roland M. v. Concord Sch. Comm., 910

F.2d 983, 995 (1st Cir. 1990) ("The law ought not to abet parties who block assembly of the required team and then, dissatisfied with the ensuing IEP, attempt to jettison it because of problems created by their own obstructionism.").

Joshua's mother's actions are reminiscent of C.H.'s parents' actions. Joshua's mother initially enrolled Joshua at Horizons Academy for the 2008-09 school year as a unilateral placement. When the Hearings Officer determined that the DOE had failed to provide a FAPE to Joshua for the 2008-09 school year, the DOE paid for that year's tuition and attempted to prepare a new IEP that rectified the failings of the earlier IEP. Joshua's mother re-enrolled Joshua at Horizons Academy without the agreement of the DOE. Like C.H.'s parents, Joshua's mother stymied the DOE's attempts to develop a new IEP. She thus caused the very procedural defect on which she relies. The sole ground of her attack on Joshua's 2009-10 IEP is that it was issued on August 18, 2009, rather than by August 4, 2009. But she does not challenge the Hearings Officer's finding that she herself was the cause of the lateness. The Third Circuit emphatically rejected Joshua's mother's argument that "stay put" always applies, no matter what.

This court fully understands that application of the "stay put" provision does not ordinarily depend on whether the underlying suit is meritorious. <u>See</u> <u>Susquenita Sch. Dist. v.</u>

Raelee S., 96 F.3d 78, 82 (3d Cir. 1996) (recognizing "stay put" as a policy decision by Congress to provide continuous placement for all handicapped children, regardless of the merits of a case). The Ninth Circuit has clearly held that, throughout court review proceedings, a school district is responsible for maintaining a placement that has been determined in an administrative decision to be appropriate until a court directs otherwise. Clovis, 903 F.2d at 641. But Clovis does not address the present situation. The Hearings Officer determined that *both* Horizons Academy and Baldwin High School were appropriate placements for Joshua, and Joshua's mother is not challenging that determination. Instead, relying on the language of the statutory "stay put" provision, Joshua's mother is arguing that Joshua must be maintained at Horizons Academy because that is his "then-current educational placement." Of course, the only reason Joshua remains at Horizons Academy is that Joshua's mother caused the IEP to be late. Absent her actions, the substantively unchallenged IEP would have been in place before the school year began at Baldwin High School, and Joshua's mother would have had no basis to challenge the IEP or to seek private school tuition from the DOE for the 2009-10 school year. In other words, Joshua's mother, by her obstructionist tactics, created the situation in which Horizons Academy became Joshua's "then-current educational placement."

While no judge who presides over IDEA cases can fail to understand a parent's wish to provide his or her child with educational opportunities, that does not mean that a court can routinely require a school district to pay for every choice a parent makes as to a child's schooling. Given Joshua's mother's responsibility for the very lateness she complains of, Horizons Academy should not be deemed Joshua's "then-current educational placement." Instead, her placement of Joshua at Horizons Academy for the 2009-10 school year appears to this court to be tantamount to a unilateral placement. When a parent unilaterally places a child in a private school notwithstanding a school district's offer of a FAPE, the "stay put" provision does not require the school district to pay private school tuition. See 20 U.S.C. § 1412(a)(10)(C); C.H., 606 F.3d at 64; cf. Forest Grove Sch. Dist. v. T.A., __ U.S. __, 129 S. Ct. 2484, 2496 (2009) (noting that, under certain circumstances, courts may equitably reduce reimbursement for unilateral placement in private school, even if it is later determined a FAPE was not provided).

Acceptance of Joshua's mother's argument that she is entitled to the benefit of the "stay put" provision would undermine the very process that Congress put in place when it passed the IDEA. As the Supreme Court noted in Schaffer v. Weast, 546 U.S. 49, 53 (2005), "The core of the [IDEA] . . . is

the cooperative process that it establishes between parents and schools." Acceptance of Joshua's mother's argument might actually encourage bad faith conduct by parents and frivolous appeals. That is, it would allow a parent to obtain reimbursement of private school tuition through years of judicial proceedings whenever the parent deliberately thwarted the IEP process, thereby rendering the IEP untimely. Indeed, at the hearing held by this court in this matter, Joshua's mother's counsel stated that the sole result of a ruling in the DOE's favor would be two more years of free tuition for Joshua while Joshua's mother engaged in further litigation. "Appropriate relief" in this case does not include reimbursement of Horizons Academy tuition based on an IEP's tardiness that Joshua's mother herself caused. To rule otherwise would frustrate, rather than advance, the intent of Congress.

The record is unclear as to the present status of tuition payments. At the hearing held by this court, the DOE's attorney indicated that the DOE had been continuing to pay Joshua's tuition at Horizons Academy, while Joshua's mother's attorney indicated that the DOE had been paying but had not paid up to today. The court recognizes that, at this point, it may make sense for Joshua to finish the 2010-11 school year at Horizons Academy, and that, as a practical matter, the State may have already paid or may opt to pay through the end of the

present school year.  This order nevertheless makes it clear that, under the circumstances of this case, there is no prohibition against moving Joshua to Baldwin High School, and the "stay put" provision does not obligate the DOE to pay his tuition at Horizons Academy.  This is consistent with the Hearings Officer's rejection of Joshua's mother's claim for tuition reimbursement for the 2009-10 school year.

VI.       CONCLUSION.

The Decision of the Hearings Officer is AFFIRMED in its entirety.  Joshua's mother's request for tuition reimbursement pursuant to the "stay put" provision is DENIED.  The Clerk of Court is directed to enter judgment for the DOE and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 31, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

A.R. v. State of Hawaii, Department of Education; Civil No. 10-00174 SOM/RLP; ORDER AFFIRMING DECISION OF ADMINISTRATIVE HEARINGS OFFICER AND DENYING REIMBURSEMENT UNDER "STAY PUT" PROVISION

33